William Sackett, Lina Sackett are in the gallery with their daughter, Leanne Sackett. Your Honors, this case represents a questionable application of a federal human trafficking statute and the application of Colorado wage and hour laws to an extended family that operates a farm and are small-time landlords in Rocky Ford. They do not make their living as human traffickers. They are not involved in smuggling or prostitution or there's no violation of the law. in this case whatsoever. It's a family, an extended family who had quarrels over time that caused the plaintiffs to leave and return on a couple of occasions. If you look at the record, the plaintiffs after they arrived in 2011 left to go to Manzanola for a period of time. They went to South Dakota for a period of time and in 2014 when they left for good, before this case was ever filed, they took everything that they wanted to with them. Apparently they found work earning an above 125% median wage in January of 2015. So in looking at this versus the reality of their living situation, the only people that my clients ever helped to gain entry into the United States were three members of Mrs. Sackett's extended family. Her brother, her sister-in-law, and their son. And they did not do this for their own benefit. They did it for the benefit of their relatives to help them get here to have an opportunity to live in the United States and work here and that's what has happened. So all that, excepting all of that, that's not really the basis of your appeal though, right? No, but I think it gives a little bit of a bird's-eye view that the echelons were provided with a place to live. They had utilities paid. Mrs. Sackett testified that she took them out for lunch. They tried to get them driver's licenses. When her brother was ill, they took him to the doctor for treatment of his kidney stones and probably saved his life. So in many, many respects, they just are operating like a family and they have their feuds. And they're brother and sister, too. They're not a parent and child here. This is a brother and a sister who are trying to live together in the same community after being apart for decades. And so the argument that they were starved, even though these the argument that they had all of their things held from them and they couldn't go anywhere is belied by the facts of their coming and going as they pleased. So, so let's, I mean, still assuming that everything you've said is true, even if that is true and basically even if it's undisputed, if they send your client discovery requests and say, and look, I'm not unsympathetic to the situation here where you've got a team of lawyers papering up pro se defendants, but they send your client discovery requests asking for certain information and responses to questions, I mean, even assuming everything you say is true, if your client basically willfully refuses to answer, and there is some evidence of this record that the failure to provide information was because he thought it would help the plaintiff's case, I mean, the district court, as a sanction, can make facts found for purposes of trial, can't it? Well, I think that the court has discretion to fashion a discovery sanction, but I think that when we look at what these interrogatories were and how they were worded in the context of this case, so for example, if you look at the first interrogatory where they ask Mr. and Mrs. Sackett to identify every 11 and their name, their social security number, their date of birth, the date of termination, these kinds of questions, I mean, they might work well if you're still in Walmart. I mean, isn't that stuff that employers are supposed to keep? Well, even if they are small-time farmers? Well, you know what Mr. Sackett responded, I mean, his written response is that no one, right, he didn't feel that the people, that his family members who are living in one of his houses and who help out as they, from their perspective, as they so chose, keep it in mind that the son, Justin, the teenager, was in school. They took him to school each day, right, so he wasn't doing a lot of work around the farm, right, he's going to school and they're helping with that. Well, he had other people who worked out there though, didn't he? Didn't the record ultimately bear that out? Well, he did have some, Mr. Sackett did hire a gentleman to help him plant and it's true that the other family members did help around the family operation. Okay, well, I'm not talking about the family, I'm gonna give you the family members because I make my kids go out and do work and I don't list them as employees, but how about, how about the guy who comes and helps him plant? I mean, he's supposed to, he's supposed to know who that is. Well, I believe that that, at least one of those gentlemen was identified and I believe... Well, you just read me the Well, no one. He, Mr. Sackett probably doesn't necessarily know what, I mean, for example, the dates of work, the job title, right, the dates held in each position. I mean, the question itself is so complicated, it has so many facets to it. Did the district court use the answer or non-answer to interrogatory number one as the basis for sanctions? My regulation is the answer to that is no, correct? Right, I'm just... So, in answer to Judge Carson's question, can you give an illustration of a question that was actually underlying the sanctions that you would, I mean, that's pertinent. The example that you're going through, I can do that. So, if we look at interrogatory number three, which was to describe in detail the roles that Mr. and Mrs. Sackett had in the day-to-day operations and decision-making relating to the farming and leasing operation from January 11 through the present. Okay, Mr. Sackett responded, I and Nita done all the work, no employees. Okay, that's what Mr. Sackett wrote in his response. And then, as you'll recall, Your Honor... But that wasn't even true. Well, I mean, maybe... I mean, we're trying to say we shouldn't hold him responsible for terms of art, but then, I mean, he answers, I have no employees, but we know from time to time he hires people. Well, it's from time to time he did. Right. Right. So, the question, though, is, remember that both Mr. and Mrs. Sackett were extensively deposed by the plaintiffs in this case, and these questions, this particular question, interrogatory number three, which, frankly, is a better question to direct to an individual in a deposition as opposed to an interrogatory because it's so broad, they were queried about this very thing and answered those questions in their depositions. But nevertheless, the plaintiffs then filed a motion to compel to say that the answer given to interrogatory number three was inadequate, did not attach the deposition exhibits so that the court could actually see if they were already asked and answered. And then, there were sanctions that were imposed as a factual finding to say that Mr. Sackett knew about whatever it was that Mrs. Sackett, in her arrangements with her sister, that he knew that she wasn't paying her sister for the work that she was doing. And that, to me, is a stretch. I to that conclusion, which makes its way into a jury instruction. And that's what's troubling about the fact that these defendants got steamrolled. Do you have any cases that say that if somebody answers a question in a doesn't matter that they stonewalled on some interrogatories or? Well, probably not that specific holding, your honor, no. Well, I'm sure nobody would ever say it that way. Right. And I think that, I mean, obviously, the general rule, and I think that Magistrate Wayne discussed this in some of her orders, is that discovery is entitled to use the different tools in the toolbox, which include interrogatories and depositions. But I guess it's just more of an issue of, here in this case, where you have parties who are so far from sophisticated in terms of their command of the English language, their understanding, really, of what is going on. And then, who do answer orally, which is the best means for these folks to communicate? Can I ask, I think it's a hard question. How do we, I mean, we are not King Solomon here. We are not here, we're here to decide what's legally correct. And with pro se litigants, there is a, there are thousands of cases dealing with Haynes versus Kerner that talk about pro se litigants pleadings being liberally construed. We also have, probably not thousands, but dozens, if not hundreds, of published Tenth Circuit and Supreme Court opinions that say that pro se litigants are obligated to follow the federal rules, just like any other litigant. I don't think that there is any license, legally, whether it's right or wrong, to say that we are to apply the federal rules of civil procedure differently for pro se litigants than for counsel litigants. So how do we take into account the equities and still confine ourselves to what is a legally correct decision? Well, I think when you, when you look at what happened here and you see that the plaintiffs did have an opportunity, through the discovery tools that they employed, to fully work up their case, that they had everything that they needed. They out-resourced these defendants by a mile, more than a mile. And so when you see that they're basically employing the discovery, these interrogatories, when they've taken 12 hours of depositions, as essentially a lever, a tool, to get it essentially a default judgment against a pro se party, you know, the question is, when is that too much? Right? And I mean, it's obviously a balancing act. But here, when you take the summary judgment recommendation and you couple it with a couple of motions in limine, to say, and by the way, they can't say anything that even contradicts these findings. They don't even get to, they don't even get to offer a defense. They cannot contradict it at trial. So that when Mr. Sackett goes to trial and wants to talk about all the assistance that he was given, he's not even allowed to speak. So that starts to become problematic in terms of due process. Is it correct that they did not appeal the, or did not object to the sanctions order with the district court judge? Right, you're talking about the firm waiver rule, your honor? Yeah. They didn't object to the recommendations on the summary judgment, which I think included the sanctions. So they didn't, but I still think that this court could look at this case not through the prism of Ehrenhaus, because this is a de facto, effectively, what happened to them before they ever got to trial, is it, it's essentially. Well, even under, oh sorry. No, go ahead, your honor. Well, under Ehrenhaus, you can still waive a challenge under Ehrenhaus, but by virtue of the firm waiver rule, in other words, if a magistrate judge recommends dismissal with prejudice for under Rule 41, and there's no objection, you, I mean, as my knowledge, you can still waive that under the firm waiver rule. Right, I think that there's a little bit different standard, I think, of interest of justice under Ehrenhaus. There is an interest of justice. Right, so I think that's the reason that we're looking more at that. All right, thank you. All right, thank you, counsel. Your time's expired. Good morning, your honors. May it please the court, my name is Paul Swanson, and I represent the Appellees, the Eshon family. Before turning to the two specific issues on appeal, I want to dispel any misconception that this is simply a quarrel between family members, or that the Sacketts were victims here. These notions are false. The jury below was presented with a claim for human trafficking, and the jury found that the Sacketts trafficked and abused the discovery process. And despite the Sacketts claim now, that the Eshon's abused the discovery process, and the court below abused its discretion, the Sacketts were not victimized. They chose not to respond to 16 interrogatories. That was it, just 16 interrogatories that the Eshon served. And the court narrowed and limited those interrogatories sua sponte. Interrogatory number one, that opposing counsel mentioned, the court narrowed that so that it was properly tailored to the case, and it struck other interrogatories that it said weren't going to be necessary. The Sacketts also chose to make misleading and incomplete document productions in response to the Eshon's 12 requests. Judge Carson, you suggested that counsel for the plaintiffs papered this case heavily, but I would take issue with that because we are looking at pretty narrow discovery requests that were not difficult to respond to, and in any event the court was not told why the Sacketts couldn't respond to them. The Sacketts simply, out of a strategy of intransigence, decided not to. As Mr. Sackett put it, he said, if I thought I gave them any information at all, it would be detrimental to my case, so I didn't give them anything. Well you agree don't you that it could be, you know, the record would show in this case that you would agree that for Mr. Sackett over there that that could seem a bit overwhelming? I think it could seem overwhelming to face five lawyers, but those five lawyers weren't each issuing separate sets of interrogatories on behalf of the Eshon's or covering with multiple questions. You wouldn't do that though because that would not comport with the rules, right? Certainly. Further, the magistrate judge took time at its first conference in person with the parties to explain what these interrogatories meant in plain English, to make sure that these Sacketts were not being inundated by something that they couldn't handle, and the magistrate judge said, all you need to do is give a narrative response, and if you can't respond, explain why. But the Sacketts didn't do that, so I don't think that any appearance of imposing lawyers on the other side would have put them at a disadvantage when they had the court being especially solicitous of their pro se status. And I think all of this is important because if the lower court here was not adequately solicitous of the Sacketts after giving warnings, guidance, multiple orders, and giving them over a year to comply with its orders, if that's not enough, then I think we'll set a crippling precedent for district courts that are handling pro se cases, and we would also give strong incentive to pro se parties to play rope-a-dope, and to see if they can get away with non-compliance, and if that fails, then to hire counsel, and through post-trial briefing or appeals, try to get another bite at the apple. So this is all background to say we would urge the court to affirm in order to vindicate the authority of district courts and the enforceability of their orders, which were disregarded here. So let me turn to the specific issues on appeal. Can we start with the second issue? Yes. About the the use of the financial information? Sure. So I want to start by specifying what this is about, what was objected to. Here we had objections to an isolated set of questions about real estate holdings, properties owned by the Sacketts. The Sacketts did not object to other testimony about their assets or about their financial position. It was only about this line of questions about their real estate holdings. So do you think, with the Sacketts being pro se at trial, that they had a duty to lodge as specific of objections as a counsel party would? No, I don't think that a pro se party has to articulate objections in the same way that a lawyer would. I do think a pro se party still needs to let the district court know what is being objected to, what are the grounds. I mean, they objected on the grounds of relevance, right? That's right. But they didn't raise the issue that's now being raised, which is prejudiced based on some you know supposed wealth. They just said relevance. And this testimony was relevant to the merits. The trafficking statute requires that the Ashones prove that the Sacketts knowingly benefited from the Ashones labor. And so whether the Sacketts owned the properties where the Ashones were forced to work is Was there discussion as to the values? The values may have been discussed for some of the properties. I don't believe that that was the main thrust. The initial question was, do you own the property where the Ashones worked? And there were some objections. And eventually the question was, how many properties do you own? And the response of testimony was, oh, a few, enough to get by. This wasn't true. And so counsel for the Ashones went through and impeached the witness and said, do you own this property and this property? And at the end of it, it wasn't a few properties. It was 13. And so this was both a merits issue and an impeachment issue. But if we get past that, this is relevant to punitive damages. And under circuit case law, there is no bar on presenting that evidence of wealth, evidence of financial assets in support of a punitive damages claim. Does the trafficking statute permit punitive damages? Not on its own terms. It is not within the statute itself, but the circuit has held that punitive damages are awardable under the TVPRA. And opposing counsel has conceded that point in their briefs as well. So there's no question that punitive damages may be applied. And under this circuit's other precedent, evidence of financial assets not only are admissible, but really are necessary so that the fact finder is going to be able to properly impose a punishment, a punishment that will fit the particular circumstances. Are you aware of a case that would require us to defer to a Colorado statute on the admissibility of this wealth information? Well, so the Sacketts have argued that under the federal statute 42 USC section 1988, when federal statutes are deficient in providing suitable remedies, a court can look to state law to fill in that blank. But the Colorado Supreme Court has said that that statute doesn't apply as long as there is adequate federal authority on the question. The 10th circuit has argued that as long as there's adequate federal authority, that's going to be enough. And when we talk about adequate federal authority, we don't just mean does the statute say whether punitive damages are awardable or whether evidence of assets can be introduced in support of punitive damages. We include case law in that as well. This was what the court's holding was in Carnes versus SCI Colorado Funeral Services, Inc. The circuit said, we've got enough guidance from the Supreme Court, from our own jurisprudence to be able to answer this question. So we don't need to invoke section 1988 and go and look at go and look at state law for that. Yeah. And it strikes me that this Colorado statute that they discuss is more of an evidentiary rule anyway that wouldn't bind us. Do you agree with that? I do agree with that. And I think there's even question whether section 1988 would apply here at all. It's a Civil War construction era statute that applied to a certain set of reconstruction era civil rights claims. And there's dispute around the circuits about whether that applies outside of those core 1860s provisions. And then if so, does it apply outside of Title 42? And here we're looking at a statute, the TVPRA, that's in Title 18. So really seems to fall pretty far outside of the core of that section 1988 provision. I would also add that even if this issue was adequately raised by the pro se parties at trial, even if it is not sufficiently relevant to the merits, or if there's a question about punitive damages, this would be harmless error. And under the abuse of discretion standard that the court is unable to show harm, or that I should say the Sackets can't show harm, there was overwhelming evidence to support a finding of punitive damages by the jury. The jury heard other evidence about assets and wealth aside from what's been objected to here. And they didn't object, and it was in fact in many instances testimony that was prompted by the Sackets. But the jury also heard that the Sackets deprived the Eshons of food, that Justin Eshon, the Eshon's son, that his son had become hunger. The jury heard evidence that the Eshons were forced to work long hours and terrible conditions with no pay. And the jury heard that Mr. Eshon was so ashamed of the situation that he had found that his family had fallen prey to, that he committed suicide. The jury awarded punitive damages here to address what this court has called a contemporary manifestation of slavery in the form of human trafficking. And so for that reason and the other independent reasons I've mentioned, I think that the punitive damages award can be and should be affirmed by the court. So I want to turn to the first issue on appeal, unless your honors have other questions on the punitive damages issue. You alluded to this in the opening arguments. The issue of the summary judgment recommendation and the order that adopted it, this was waived. It is barred by the firm waiver rule. Under federal rule 72, the Sacketts had 14 days to object to the magistrate judge's summary judgment recommendation. And that was made clear for them in the recommendation itself. The recommendation said, failure to make timely objections may bar a de novo review by the district judge of the magistrate judge's proposed findings and recommendations and will result in the waiver of the right to appeal. What about the interest of justice exception? Sure. So first, that should be probed there. I mean, they certainly didn't file a reply brief with that argument, but the opening brief is interspersed throughout with notions of due process, fairness, overreaching, and now it's true that on appeal they're not uncounseled, but that it seems very much like the sum and substance of an interest of justice exception. Should we construe those notions of overreaching and unfairness and the like to be the equivalent of an argument based on the interest of justice exception? I don't think so, Your Honor, for two reasons. First, as you pointed out, we no longer extend a solicitous reading to the Sacketts filings because they are represented. And secondly, much like the the plain error standard that this court applies, that needs to be argued and specifically argued. You can't just conjure it from a number of other points you make. You need to explain to the circuit what the standard is, how it applies, and the Sacketts didn't do that here. And even the facts that they do put forth in their brief, they're not going to satisfy that standard. They need to show that there was some effort to object, and they haven't shown that. There was no effort whatsoever, even though the Sacketts had previously received the same admonition from the magistrate judge about other recommendations, and even though they had objected to other recommendations. They simply chose not to do so here, so they can't satisfy that first prong of the interest of justice test. They also would need to show some excuse for their failure. What's the reasonable explanation for why they didn't object? And they didn't try to. And it would be hard for them to proffer some reasonable excuse when they not only fail to object, but down the road, when these findings from the summary judgment order get adopted in the pretrial order, they don't object then. They get adopted in the jury instructions, and they don't object then. They don't build any record where there's some clear set of objections. They are concerned about it in response to the motions in limine, but they really don't brief that issue properly with the district judge either. So I don't think they can satisfy that second requirement that they would show some excuse for their failure. Does it make any difference at all in this case what the educational levels of Mr. and Mrs. Sackett are, and whether Mrs. Sackett was, whether English is her first language? Does that make any difference? I think that the relevant consideration is that we have pro se parties here, and every district judge needs to be given some discretion to tailor instructions and guidance to make sure that the parties before him or her are not caught unawares that they understand more or less what is going on. And the magistrate judge and the district judge did that. The magistrate judge, as I mentioned, giving extensive guidance. I mean, pages of the first hearing transcript dedicated to explaining in plain English what was going on. And the district judge addressed this in response to the motions in limine where the Sackett said, hey, we didn't understand what a motion in limine is. We don't speak Latin. And the judge said, well, but you can read. You've made filings. And the motion in limine explains exactly what it's requesting and what the consequences of that request would be if granted. So the pro se status has to be considered. But I don't think we can expect a district court to conduct some sort of voir dire and then find out exactly what the abilities of the pro se parties are. And in a case like this, the Sacketts chose to proceed pro se and disregarded the court's suggestion that they might get pro bono counsel through the court's pro bono panel. I'll close by saying, even if we want to look at this summary judgment order not as a sanction, but just by its own lights, this was a pretty standard application of Rule 56G principles that the magistrate judge went through and applied the facts before it that were undisputed. Thank you, Your Honor. Thank you, counsel. I believe the time's expired. So counsel are excused. We appreciate your arguments this morning. The case shall be submitted. Court will be in recess for a short period.